WETHERELL, J.
 

 Petitioners, Avco Corporation and Tex-tron Lycoming Reciprocating Engine Division (collectively “Avco”) and Precision Airmotive Corporation and Precision Air-motive, LLC (collectively “Precision”), seek certiorari review of the non-final orders denying them motions for summary judgment. They argue that the trial court erred in determining that Respondents’ claims are not barred by the statutes of repose in the General Aviation Revitalization Act of 1994 (GARA)
 
 [1]
 
 and section 95.031(2)(b), Florida Statutes (2004). We consolidate these cases for purposes of this opinion and deny the petitions for writ of certiorari because Petitioners fail to demonstrate that the challenged orders will result in irreparable harm that cannot be remedied on appeal.
 

 Factual and Procedural Background
 

 On September 23, 2004, a private Cessna R182 piloted by Través Neff crashed in Milton shortly after takeoff. Neff and the three others on board the aircraft were killed in the crash. The National Transportation and Safety Board investigated the crash and found that the float device in the aircraft’s carburetor was damaged and that some of the related parts were worn.
 

 On September 21, 2006, Respondents filed a complaint against Petitioners (and others), alleging that the Marvel Schebler carburetor installed on the aircraft was defectively designed and caused the crash. The complaint alleged that Avco, the engine manufacturer, and Precision, the successor to the carburetor manufacturer, knew the carburetor design was subject to failures and that they failed to warn the Federal Aviation Administration (FAA) and the general public of such failures. Specifically, the complaint alleged that the carburetor had incompatible metals that caused a wearing of parts, which, in turn, caused the float to stick and resulted in the engine receiving an improper fuel/air mixture.
 

 
 *600
 
 The aircraft at issue was delivered to its first purchaser in 1981. The carburetor was last overhauled in October 1992 as part of a manufacturer recommended engine overhaul. The engine overhaul was completed in December 1992.
 

 Petitioners filed motions for summary judgment, arguing that the claims were barred by the 18-year statute of repose in GARA
 
 [2]
 
 and the 12-year statute of repose in section 95.031 (2)(b).
 
 [3]
 
 Avco asserted that it did not manufacture anything for the aircraft subsequent to its original delivery in 1981. Precision asserted that it did not install any replacement parts in the engine or overhaul the carburetor, that there was no evidence regarding who manufactured the replacement parts used in the carburetor overhaul, and that there was no evidence that Precision was the successor-in-interest to this unidentified manufacturer.
 

 Respondents countered with affidavits and other evidence indicating that carburetor parts installed in the 1992 engine and carburetor overhaul (including the new float device) were based upon design specifications mandated by Petitioners and were manufactured under Petitioners’ direct supervision. The affidavits also detailed the extensive history of float-related problems with Marvel Schebler carburetors that Petitioners failed to address. The affidavits concluded based upon a review of the available documentation that Petitioners affirmatively concealed and withheld from the FAA information concerning problems with the Marvel Sche-bler carburetor’s design despite having notice of a reportable design defect. Respondents argued based upon this evidence that the applicable repose periods as to both Petitioners were restarted in 1992 by the engine and carburetor overhaul because Petitioners were the de-facto manufacturers of the replacement parts,
 
 [4]
 
 and that the periods were tolled based upon the fraud and concealment provisions in GARA
 
 [5]
 
 and section 95.031(2)(d).
 
 [6]
 

 if the claimant pleads with specificity the facts necessaty to prove, and proves, that the manufacturer with respect to a type certificate or airworthiness certificate for, or obligations with respect to continuing airworthiness of, an aircraft or a component, system, subassembly, or other part of an aircraft knowingly misrepresented to the Federal Aviation Administration, or concealed or withheld from the Federal Avia
 
 *601
 
 tion Administration, required information that is material and relevant to the performance or the maintenance or operation of such aircraft, or the component, system, subassembly, or other part, that is causally related to the harm which the claimant allegedly suffered.
 

 The trial court denied Petitioners’ motions for summary judgment, finding that genuine issues of material fact existed. The court found that a genuine dispute existed as to whether the replacement parts in the overhauled carburetor were manufactured or caused to be manufactured by Petitioners. The court also found that there was a genuine dispute as to whether Petitioners had fraudulently misrepresented or concealed the design defects in the carburetor.
 

 Petitioners timely filed petitions for writ of certiorari in this court, arguing that the trial court erred in determining that Respondents’ claims were not barred by the statutes of repose. Petitioners argue that the 1992 engine overhaul did not revive claims against the original manufacturer of the engine and carburetor, but rather only applied to the actual manufacturer of the replacement parts at issue. Petitioners further argue that Respondents failed to specifically plead or present any evidence that Petitioners fraudulently misrepresented anything concerning the carburetor design so as to toll the running of the statutes of repose.
 

 Analysis
 

 Certiorari is the proper remedy, in limited circumstances, to review a non-final order that is not subject to appeal under Florida Rule of Appellate Procedure 9.130.
 
 Martin-Johnson, Inc. v. Savage,
 
 509 So.2d 1097, 1099 (Fla.1987). To obtain certiorari relief, Petitioners must demonstrate (1) a departure from the essential requirements of law, (2) a resulting material injury for the remainder of the trial, and (3) the lack of an adequate remedy on appeal.
 
 Id.
 
 The court is required to first determine whether Petitioners have shown an irreparable harm before determining whether the trial court departed from the essential requirements of law.
 
 See Taylor v. TGI Friday’s, Inc.,
 
 16 So.3d 312, 313 (Fla. 1st DCA 2009);
 
 Commonwealth Land Title Ins. Co. v. Higgins,
 
 975 So.2d 1169,1176 (Fla. 1st DCA 2008).
 

 The fact that a petitioner will incur litigation expenses is normally not enough to meet the irreparable harm test. We have repeatedly declined to grant cer-tiorari review to orders that petitioners claim will cause irreparable harm due to payment of unnecessary litigation and defense expenses.
 
 W. Fla. Reg’l Med. Ctr., Inc. v. See,
 
 18 So.3d 676 (Fla. 1st DCA 2009);
 
 United Life Ins. Co. v. lowers,
 
 118 So.2d 85 (Fla. 1st DCA 1960). We recognize, however, that when a statute provides immunity from suit, certiorari review of a non-final order denying such immunity is appropriate.
 
 See Seminole Tribe of Fla. v. McCor,
 
 903 So.2d 353, 357-58 (Fla. 2d DCA 2005) (granting certiorari review of order denying motion for summary judgment because the tribe demonstrated entitlement to sovereign immunity and stating that sovereign immunity, like qualified immunity, involved immunity from suit rather than defense from liability).
 

 Petitioners argue that the purpose of GARA was to shield manufacturers from
 
 *602
 
 costly litigation, which is precisely the harm that they will suffer without immediate review of the trial court’s denial of their motions for summary judgment. They contend that the trial court’s order was equivalent to an order denying qualified immunity because the loss of their statutory immunity from suit cannot be remedied on appeal.
 

 Respondents counter that the purpose of GARA was to create a limited statute of repose subject to several factually-driven exceptions, and not to provide aircraft manufacturers immunity from suit. Respondents contend that the statutes of repose in GARA and section 95.031(2)(b) are essentially affirmative defenses and that the alleged erroneous denial of those defenses can be adequately remedied on appeal.
 

 Thus, the question that we must address is whether Petitioners’ claimed right to protection from suit under GARA’s statute of repose is a right to immunity from suit or merely a defense to liability. No Florida court has addressed this issue, and the courts that have addressed the issue are split.
 

 In
 
 Lyon v. Aguata S.P.A.,
 
 252 F.3d 1078 (9th Cir.2001), the Ninth Circuit reviewed the legislative history of GARA and observed that:
 

 It is apparent that Congress was deeply concerned about the enormous product liability costs that our tort system had imposed upon manufacturers of general aviation aircraft. It believed that manufacturers were being driven to the wall because, among other things, of the long tail of liability attached to those aircraft, which could be used for decades after they were first manufactured and sold.
 

 Id.
 
 at 1084 (citing H.R.Rep. No. 103-525, pt. I, at 1^4 (1994),
 
 re/printed in
 
 1994 U.S.C.C.A.N. 1638, 1638-41). The court characterized GARA as “a classic statute of repose” and stated that if an accident occurs the day after the GARA period runs, “no action whatsoever is possible.”
 
 Id.
 

 In
 
 Estate of Kennedy v. Bell Helicopter Textron, Inc.,
 
 283 F.3d 1107 (9th Cir.2002), a helicopter pilot was killed when the helicopter developed a fatigue crack in a component of the tail, came apart in mid-air, and crashed. The helicopter manufacturer moved for summary judgment on the grounds that the products liability claims were barred by GARA. The district court granted partial summary judgment in favor of the pilot’s estate, rejecting the manufacturer’s GARA defense. The Ninth Circuit reversed. As it did in
 
 Lyon,
 
 the court characterized GARA as a statute of repose, not a statute of limitations. The court held that it had jurisdiction to review the district court’s non-final order under the collateral order doctrine because the protection provided by GARA was analogous to the defense of qualified immunity provided to government officials in that “it creates an explicit statutory right not to stand trial which would be irretrievably lost should [the manufacturer] be forced to defend itself in a full trial.”
 
 Id.
 
 at 1110.
 

 Judge Paez dissented. He disagreed with the court’s exercise of jurisdiction under the collateral order doctrine because, in his view, the analogy to qualified immunity was inappropriate.
 
 Id.
 
 at 1113— 14 (explaining that qualified immunity is “fundamentally distinct from the GARA statute of repose”). Judge Paez noted that the text of GARA closely paralleled the text of many statutes of limitations, and he stated that in enacting GARA, Congress only intended to cut the “infinite-
 
 liability
 
 tail” for general aviation manufacturers, not provide immunity.
 
 Id.
 
 at 1115 (emphasis in original). Judge Paez pointed out that the legislative history of GARA provided “no indication that an essential aspect of the GARA defense is the right to
 
 *603
 
 be free from the burdens of trial,”
 
 id.
 
 at 1113, but rather described the law as “a narrow and considered response to the ‘perceived’ liability crisis in the general aviation industry.”
 
 Id.
 
 at 1115 (quoting H.R.Rep. No. 103-525(11) (1994)) (emphasis omitted).
 

 The Third Circuit agreed with Judge Paez’s dissent in
 
 Robinson v. Hartzell Propeller, Inc.,
 
 454 F.3d 163 (3d Cir.2006). In that case, the plaintiffs were seriously injured when the aircraft they were flying suffered a fractured propeller mid-flight and crashed. The propeller manufacturer moved for summary judgment under GARA’s statute of repose.
 
 Id.
 
 at 167. The district court denied the motion. On appeal, the manufacturer argued that a decision on a statute of repose was akin to a decision denying qualified immunity, which is immediately appealable.
 
 Id.
 
 at 169. The plaintiffs asserted that the order was similar to an order denying a statute of limitations defense. The Third Circuit declined to accept the manufacturer’s appeal, holding that the collateral order doctrine did not apply.
 

 The court agreed with Judge Paez that the interests protected by GARA’s statute of repose were more similar to a statute of limitations than to a grant of qualified immunity because qualified immunity was rooted in preventing the social costs of subjecting government officials to broad-ranging discovery whereas the purpose of the GARA defense was to relieve manufacturers from economic costs.
 
 Id.
 
 at 173. The court further noted that the GARA statute of repose was not “a pure immunity” because, unlike qualified immunity, it contained a misrepresentation exception under which immunity would not attach.
 
 Id.
 
 Finally, the court noted that it had previously exercised jurisdiction to review pre-trial denials of immunity only when the denials raised questions of law, but in this case the district court found a factual dispute as to the applicability of the misrepresentation exception.
 
 Id.
 
 at 174.
 

 The Pennsylvania Supreme Court reached the opposite conclusion in
 
 Pridgen v. Parker-Hannifin Corp.,
 
 588 Pa. 405, 905 A.2d 422, 424 (2006). In that case, a 31-year-old aircraft crashed on departure killing several people and severely injuring one person.
 
 Id.
 
 at 425. The plaintiffs alleged that the crash was caused by a failure of engine and fuel system components that were replaced and overhauled within 18 years of the accident. They also alleged that the engine manufacturers had knowledge of the defects causing the crash and intentionally misrepresented or concealed the defects. The engine manufacturers moved for summary judgment, arguing that they did not manufacture or supply any of the allegedly defective parts that had been replaced. The trial court denied the motion, and the intermediate appellate court denied review under the collateral order doctrine.
 

 The issue before the Pennsylvania Supreme Court was whether to allow interlocutory appeals to review a trial court’s denial of summary judgment raising the GARA statute of repose. Consistent with the Ninth Circuit’s decision in
 
 Estate of Kennedy,
 
 the court held that such review was permitted under the collateral order doctrine.
 
 Id.
 
 at 434. The court stated that “the federal interests underpinning GARA are sufficiently important to justify the intervention of appellate courts in product liability cases in furtherance of the policy of cost control, where central legal contentions about GARA’s scope are legitimately in dispute.”
 
 Id.
 
 at 433. The court distinguished the Third Circuit’s decision in
 
 Robinson
 
 because the denial of summary judgment in that case was also based upon factual disputes concerning the misrepresentation exception, and in this case the trial court had not yet made a determi
 
 *604
 
 nation concerning whether there were material facts in dispute regarding misrepresentation.
 
 Id.
 
 at 423 n. 14.
 

 The issue addressed in these
 
 cases
 
 — i.e., whether the appellate court should exercise jurisdiction to review a non-final order denying the manufacturer’s GARA defense — is the same issue presented in this case. Therefore, the analysis in these cases is pertinent, and persuasive, even though the cases involve review under the collateral order doctrine (which Florida has not adopted,
 
 see Schneider v. Schneider,
 
 732 So.2d 1147 (Fla. 4th DCA 1999)), rather than certiorari.
 

 We agree with Judge Paez’s dissent in
 
 Estate of Kennedy
 
 and the Third Circuit’s decision in
 
 Robinson
 
 that the GARA statute of repose is more analogous to a statute of limitations than it is to an immunity from suit. The repose period is not absolute, and it appears from the legislative history that the statute was enacted to protect manufacturers from the “infinite liability-tail” of product liability suits rather than to protect them from the burdens of discovery and trial. Thus, we reject Petitioners’ contention that the trial court’s denial of their motions for summary judgment will subject them to immediate harm of the type that GARA was enacted to prevent that cannot be remedied on appeal, particularly where the trial court found factual disputes concerning the applicability of the GARA defense.
 
 Accord Robinson,
 
 454 F.3d at 173-74.
 

 Our conclusion regarding the nature of the GARA statute of repose is consistent with Florida cases that treat other statutes of repose like statutes of limitations or affirmative defenses.
 
 See Doe v. Hillsbor-ough County Hasp. Auth.,
 
 816 So.2d 262 (Fla. 2d DCA 2002);
 
 McLeod v. Barber,
 
 764 So.2d 790 (Fla. 5th DCA 2000).
 
 Cf Todd v. Johnson,
 
 965 So.2d 255 (Fla. 1st DCA 2007) (quoting
 
 Vause v. Bay Med. Ctr.,
 
 687 So.2d 258, 261 (Fla. 1st DCA 1996), for the proposition that a statute of repose was a straightforward affirmative defense; the court inserted the word “repose” for the word “limitations” found in the
 
 Vause
 
 opinion). The fact that section 2(b) of GARA (and section 95.031(2)(d)) contain exceptions to the application of the repose periods provides further support for the proposition that the statutes are not “true” statutes of repose or jurisdictional non-claim statutes.
 
 Cf. Comerica Bank & Tmst, F.S.B. v. SDI Operating Partners, L.P.,
 
 673 So.2d 163 (Fla. 4th DCA 1996) (construing the two-year period in section 733.710 as a statute of repose because the period cannot be enlarged by the court);
 
 Hirsh v. Crews,
 
 494 So.2d 260 (Fla. 1st DCA 1986) (construing the 60-day period in section 174.171 as a statute of non-claim that is an absolute bar to any suit filed after that period).
 

 In sum, we hold that the 18-year statute of repose in GARA and the 12-year statute of repose in section 95.031(2)(b) are analogous to statutes of limitations that operate as affirmative defenses. An error concerning the trial court’s ruling on an affirmative defense can be corrected on appeal from a final order.
 
 See Panagakos v. Laufer,
 
 779 So.2d 296 (Fla. 2d DCA 1999). As such, Petitioners fail to demonstrate irreparable harm that cannot be remedied on appeal.
 

 Conclusion
 

 For the foregoing reasons, the petitions for writ of certiorari are DENIED.
 

 KAHN and PADOVANO, JJ., concur.
 

 [1]
 

 . Public Law 103-298, as amended (reprinted in the notes to 49 U.S.C. § 40101).
 

 [2]
 

 . Section 2(a)(1) of GARA provides in pertinent part that "no civil action for damages for death or injury to persons or damage to property arising out of an accident involving a general aviation aircraft may be brought against the manufacturer of the aircraft or the manufacturer of any new component, system, subassembly, or other part of the aircraft, in its capacity as a manufacturer if the accident occurred” more than 18 years after the aircraft’s delivery to its initial purchaser.
 

 [3]
 

 . Section 95.03l(2)(b) provides in pertinent part:
 

 Under no circumstances may a claimant commence an action for products liability, including a wrongful death action or any other claim arising from personal injury or property damage caused by a product, to recover harm allegedly caused by the product ... if the harm was caused by exposure or use of the product more than 12 years after delivery of the product to its first purchaser....
 

 [4]
 

 . Section 2(a)(2) of GARA includes what is commonly referred to as the "rolling provision,” which provides that if a replacement component or system caused the accident, the 18-year repose period runs from the date the replacement component or system was installed. Similarly, we have previously held that replacement parts toll section 95.031 (2)(b) for injuries resulting from defects in the replacement parts.
 
 See Cassoutt v. Cessna Aircraft Co.,
 
 742 So.2d 493 (Fla. 1st DCA 1999).
 

 [5]
 

 . Section 2(b)(1) of GARA provides that the statute’s 18-year repose period does not apply
 

 [6]
 

 . The 12-year repose period provided in section 95.03l(2)(b) is tolled for any period during which
 

 the manufacturer through its officers, directors, partners, or managing agents had actual knowledge that the product was defective in the manner alleged by the claimant and took affirmative steps to conceal the defect. Any claim of concealment under this section shall be made with specificity and must be based upon substantial factual and legal support.
 

 § 95.03 l(2)(d), Fla. Stat.